***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JALONN LASSITER, | : | Civil Action No.: 15-5674 (JLL) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | : | |
| Respondents. | : | |

**LINARES**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Jalonn Lassiter ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction (ECF No. 1). The State has filed a response to the petition (ECF No. 9), to which Petitioner has replied (ECF Nos. 10, 11, 12). For the following reasons, this Court will dismiss the petition with prejudice as time barred and will deny Petitioner a certificate of appealability.

**I. BACKGROUND**

In its opinion affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division provided the following summary of the facts underlying this case:

> In October 2004, a Union County grand jury indicted Jeremy Franklin, Boris Franklin, and [Petitioner], Jalonn Lassiter, charging them as follows: first-degree robbery, N.J.S.A. 2C:15-1 (counts one and four); first-degree felony murder, N.J.S.A. 2C:11-3a(3) (count two); and second-degree kidnapping, N.J.S.A. 2C:13-1b (count

five); the grand jury indicted [Petitioner] individually on a charge of first-degree murder, N.J.S.A. 2C:11-2a(1) and/or (2) (count three).

After the trial judge denied [Petitioner]'s motion to suppress a statement [Petitioner] gave to the police, he was tried to a jury from September 26, 2006 through October 6, 2006. The jury convicted him of first-degree robbery (count one); first-degree felony murder (count two); and first-degree aggravated manslaughter, amended from murder (count three); and acquitted him of counts four and five. After merging counts one and three with count two, the court sentenced [Petitioner] to life without parole.

. . . .

We begin with the trial evidence. Ricardo McLeod testified that Alicia Stewart introduced him to Boris and Jeremy Franklin so he could sell them drugs. Prior to March 13, 2004, McLeod met with the Franklins three times and sold them cocaine. McLeod provided the drugs for the first transaction, but because he did not have the drugs when the brothers requested the next two exchanges, he obtained them from Tyshon Davis. Boris Franklin subsequently contacted McLeod to purchase additional cocaine and the two agreed to meet on March 13, 2004, at the Burger King on Route 1 and 9 in Elizabeth.

At approximately 9:00 p.m. or 10:00 p.m. on that day, McLeod and Tyshon Orr met the Franklins in the Burger King parking lot. The brothers arrived in one car and McLeod and Orr arrived in another. They then left the parking lot in their respective cars and drove to Van Buren Street, approximately one block from the Burger King. There, Boris Franklin moved from his car into the back seat of McLeod's car. The men had agreed on a sale price of $10,000, but Franklin told McLeod that he did not have the money.

According to McLeod, at that point, Franklin returned to his car and asked McLeod to meet him at the Burger King parking lot. McLeod told him that he did not have the drugs with him. Consequently, McLeod remained on Van Buren Street and waited for Davis to arrive with the drugs. When Davis arrived, he was accompanied by Abelardo Astorga. Astorga remained on Van Buren Street while McLeod and Davis walked to the Burger King parking lot and got into the back seat of the Franklins' car.

2

Jeremy Franklin got out of the car to go into the Burger King restaurant. As the remaining three men were getting out of the car, [Petitioner] arrived in a car, got out of the passenger side, and pointed a gun in Davis's direction. McLeod heard one gunshot. Then, as [Petitioner] pointed a gun at McLeod, the men stole his jacket, $80, and a phone.

Boris Franklin testified that he was not comfortable with the drug transaction of March 13, 2004. He remained with McLeod, however, because Stewart had assured him that McLeod was not trying to harm him and that the transaction would go smoothly. Franklin spoke to [Petitioner] several times during the night and informed him that he would be at the Burger King parking lot. He did not remember whether he told [Petitioner] that he was in trouble or felt nervous about the drug transaction. He also indicated that Davis "did not pull a gun on" him; nor were the two fighting. According to Boris Franklin, he was outside of the car having a conversation with Davis when [Petitioner] arrived at the parking lot, got out of his car with a gun in his hand, and shot Davis as Davis began to run.

McLeod denied that he or Davis had intended to rob the Franklin brothers that night; neither he nor Orr were armed, nor were Astorga or Davis.

At trial, Detective Dean Marcantonio of the Union County Prosecutor's office read into evidence a statement that [Petitioner] gave to the police after he was taken into custody. In his statement, [Petitioner] admitted that Boris Franklin contacted him on the night in question because he wanted [Petitioner] to accompany him to the drug purchase to ensure that "nothing went wrong." [Petitioner] said that he arrived at the Burger King with Leon Gandy. [Petitioner] described what occurred:

> Fah [Boris Franklin] told us to come over, and Buck [Leon Gandy] drove on the opposite way of the drive-thru behind the Burger King. We pulled up and Fah was outside the car talking to the dude that got shot. All I remember was the guy saying to Fah, "What do you mean you don't know me," and then Buck reached for the gun that was in the middle. I told him give it to me, I'm closer. Buck said, "No,

3

> that's my man. I got him." We were struggling with the gun, it was pointed towards the building, and before you know it by me pulling it forward and him bullying it back the gun went off. Buck pulled out leaving me out in the parking lot with the gun. So I got in the car with Fah, and Rah [Jeremy Franklin], and the other kid that was in the back seat. We were pulling out and I seen the Spanish guy that was coming across the highway with a white bag in his hand. The kid sitting next to me said, "That's the guy that was with the other guy and he's got the drugs." . . . Faheem tried telling the guy to come over to the car. The guy got scared and took off. . . . I saw the guy on the ground. We then took off and jumped on the Turnpike.
>
> [Petitioner]'s videotaped statement was also shown to the jury.

(Document 4 attached to ECF No. 9 at 1-6, footnotes and citations omitted).

Following his conviction, Petitioner appealed. (*Id.*). The New Jersey Superior Court's Appellate Division affirmed his conviction on June 19, 2009. (*Id.*). Petitioner did not file a petition for certification or petition for certiorari on direct appeal. Instead, Petitioner filed a first petition for post-conviction relief on July 9, 2009. (Document 5 attached to ECF No. 9). The PCR court denied that petition on February 25, 2011. (Document 13 attached to ECF No. 9 at 1). Petitioner appealed, and the Appellate Division affirmed the denial of his PCR petition by way of an opinion dated April 19, 2013. (*Id.*). Petitioner thereafter filed a petition for certification with the New Jersey Supreme Court, which was denied on October 25, 2013. (Document 16 attached to ECF No. 9). Petitioner then filed a petition for certiorari to the United States Supreme Court, but that petition was denied on April 28, 2014. (Document 19 attached to ECF No. 9). On September 17, 2014, Petitioner filed a motion for a new trial based on allegedly newly discovered evidence in the trial court. (Document 20 attached to ECF No. 9 at 2). The trial court denied

4

that motion on January 6, 2015 (*Id.* at 1-2), and Petitioner did not appeal. Petitioner ultimately filed his current habeas petition on July 4, 2015. (ECF No. 1 at 16).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is

5

clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B. Analysis

#### 1. Petitioner's petition for a writ of habeas corpus is time barred

In its answer to Petitioner's petition for a writ of habeas corpus, the State argues that the petition should be dismissed because it was filed after the expiration of the one year statute of limitations. Petitions for a writ of habeas corpus brought pursuant to § 2254 are subject to a one year statute of limitations. *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). In most cases, including this one, the statute of limitation for a § 2254 petition runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" including the ninety day period for the filing of a petition for certiorari before the Supreme Court. *Id.* This statute of limitations, however, is statutorily tolled while a petitioner has a properly filed petition for post-conviction relief pending before the state courts. *See, e.g., Figueroa v. Buechele*, No. 15-1200, 2015 WL 1403829, at *2 (D.N.J. Mar. 25, 2015). Although a petitioner may file a petition for certiorari as to the denial of his post-conviction relief petitions,

6

statutory tolling only applies to the time his properly filed PCR petitions are pending in the state courts, and thus the time for filing a petition for certiorari and any time during which such a petition is pending are not tolled. *See Lawrence v. Florida*, 549 U.S. 327, 332-37 (2007).

In this case, Petitioner was tried and convicted in the fall of 2006, and was sentenced to life without parole shortly thereafter. (*See* Document 4 attached to ECF No. 9 at 2). Petitioner timely filed a direct appeal. (*Id.* at 1). The Appellate Division affirmed Petitioner's conviction on June 19, 2009. Petitioner filed neither an application for certification with the New Jersey Supreme Court nor a petition for certiorari to the Supreme Court, and Petitioner's conviction therefore became final when the time for seeking a petition for certification expired, *see Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999); *see also Smith v. Holmes*, No. 13-1876, 2016 WL 1464649, at *1 (D.N.J. Apr. 14, 2016) (conviction of state prisoner becomes final twenty days after entry of judgment in Appellate Division where petitioner does not file petition for certification in the New Jersey Supreme Court), which occurred twenty days after the Appellate Division affirmed Petitioner's sentence.[1] *See* N.J. Court Rule 2:12-3 (notice of petition for certification must be filed within twenty days of the entry of a final judgment of the Appellate

---

[1] The State argues that Petitioner's conviction did not become final until after the time for filing a petition of certiorari ran following an additional 90 days. Although *Kapral* and its progeny stand for the proposition that a prisoner's conviction does not become final until the time for filing a certiorari petition expires even where no such petition is sought, this additional time only arises where the prisoner exhausts all of his appeals in the lower courts. *See Kapral*, 166 F.3d at 577. Because Petitioner did not file a petition for certification, and therefore did not make use of all of his state appeal levels, he is only entitled to the time period for filing the last available appeal which was not filed, and not the additional time for filing a petition for certiorari after that time expired. *Id.* This distinction does not change the result here, however, because Petitioner filed his first PCR petition on July 9, 2009, and thus his statutory limitations period was tolled in any event during the 90 day certiorari period.

7

Division). Thus, Petitioner's petition became final on July 9, 2009.

Although Petitioner's one year limitations period would have begun to run on July 9, 2009, the one year period was statutorily tolled as of July 9, 2009, because Petitioner filed his first petition for post-conviction relief (PCR) on that date. (Document 5 attached to ECF No. 9). The PCR court denied Petitioner's petition on February 25, 2011. (Document 13 attached to ECF No. 9 at 1). Petitioner appealed, and the Appellate Division affirmed the denial of his PCR petition on April 19, 2013. (*Id.*). Petitioner thereafter filed a petition for certification with the New Jersey Supreme Court, which was denied on October 25, 2013. (Document 16 attached to ECF No. 9). Petitioner also filed a petition for certiorari to the United States Supreme Court, but that petition was denied on April 28, 2014. (Document 19 attached to ECF No. 9).

Because the New Jersey Supreme Court denied certification on Petitioner's PCR petition on October 25, 2013, his one year limitations period began to run on that date. That Petitioner filed a petition for certiorari does not affect that fact. *Lawrence*, 549 U.S. at 332-37. Three hundred and twenty seven days of that one year period ran before Petitioner filed a motion for a new trial based on allegedly newly discovered evidence on September 17, 2014. Assuming *arguendo* that statutory tolling applies while such a motion is pending in the state courts, Petitioner's one year limitations period would have resumed, at the latest, on February 20, 2015, 45 days after the trial court denied Petitioner's motion on January 6, 2015 (Document 20 attached to ECF No. 9), and the time for filing an appeal of that denial expired. *See* N.J. Court Rule 2:4-1 (appeals from final orders of trial courts must be taken within 45 days of entry). The thirty eight days which remained on Petitioner's one year limitations period thus expired, at the latest, on March 30, 2015.

8

Although the one year limitations period had expired, at the latest, on March 30, 2015, Petitioner did not file his instant habeas petition until July 4, 2015, when Petition certifies that he placed his petition into the prison mailing system. (ECF No. 1 at 16); *see also Jones v. Morton*, 195 F.3d 153, 157-58 (3d Cir. 1999) (pro se habeas petition is "deemed filed at the moment he delivers it to prison officials for mailing to the district court"). Thus, when Petitioner filed his current habeas petition, that petition was already untimely by more than three months. As such, Petitioner's current habeas petition would be well and truly time barred absent some form of equitable tolling.

The question, then, is whether Petitioner is entitled to equitable tolling. Equitable tolling "is a remedy which should be invoked 'only sparingly.'" *United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). To be entitled to equitable tolling, a habeas petitioner must show "(1) that he faced 'extraordinary circumstances that stood in the way of timely filing,' and (2) that he exercised reasonable diligence" in pursuing his rights throughout the period to be tolled. *United States v. Johnson*, 590 F. App'x 176, 179 (3d Cir. 2014) (quoting *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)). "There are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon*, 654 F.3d at 399. The courts should only permit tolling, however, "in the rare situation where it is demanded by sound legal principles as well as the interest of justice." *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005).

To establish extraordinary circumstances sufficient to warrant tolling, a petitioner must show either that he has been actively misled, that he was prevented from asserting his rights in some extraordinary way, that he timely asserted his rights in the wrong forum, or that the court

9

misled him regarding the steps he needed to take to preserve his claim. *See Jones*, 195 F.3d at 159; *see also Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir.), *cert. denied*, 546 U.S. 957 (2005). That Petitioner or his attorney miscalculated the time remaining on his limitations period without more does not constitute an extraordinary circumstance. *See Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002). Ignorance of the law, including as to the limitations period, is also insufficient to excuse a late filing in the absence of further pertinent facts, even where the petitioner is incarcerated and acting pro se. *See United States v. Johnson*, 544 U.S. 295, 311 (2005); *see also Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001).

In his replies, the only argument[2] Petitioner presents to excuse his tardy filing is that he was unaware of the steps he needed to take to make his case. Petitioner is therefore arguing a combination of ignorance of the law and excusable neglect – neither of which are sufficient to warrant equitable tolling. *Johnson*, 544 U.S. at 311; *Fisher*, 174 F.3d at 714; *see also United*

---

[2] Although Petitioner does take issue with the jury's conclusion that his helping his friends "get their money or the[ir] drugs" back (*see* ECF No. 11 at 1-2) amounts to robbery, Petitioner does not appear to be attempting to assert actual innocence. *See generally* In *McQuiggan v. Perkins*, --- U.S. ---, ---, 133 S. Ct. 1924 (2013) (actual innocence claim can serve as a gateway to permit time barred claims to be raised). Even had Petitioner attempted to raise such a claim, establishing a gateway actual innocence claim requires that a petitioner show his innocence through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Petitioner has presented no such new evidence, providing only his own bald assertions that the crime scene *may* have been tampered with by persons unknown. Petitioner has certainly failed to provide any "evidence of innocence . . . so strong that a court cannot have confidence in the outcome of the trial," as is required to make out a gateway innocence claim. *McQuiggin*, 133 S. Ct. at 1936. Indeed, even to the extent he asserts that there may have been some tampering, Petitioner still appears to admit, to one extent or another, his part in the shooting. (*See* ECF No. 11 at 1). Thus, Petitioner has failed to make out actual innocence to the extent he wished to raise such a claim, and his petition remains time barred.

*States v. Thomas*, 713 F.3d 165, 174 (3d Cir. 2013) (mere excusable neglect insufficient to warrant tolling). As such, Petitioner has presented no basis for the equitable tolling of his statute of limitations, and, as the Court perceives no basis for tolling not presented to it by Petitioner, his petition remains well and truly time barred. This matter must therefore be dismissed with prejudice.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's habeas petition is time barred, nor with this Court's conclusion that Petitioner is not entitled to equitable tolling, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. As such, this Court will deny Petitioner a certificate of appealability.

11

## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE as time barred and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Hon. Jose L. Linares,
United States District Judge